IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| ADAM CIRALSKY | ) | Civil Action No. 00-1709-JDS |
| | ) | |
| Plaintiff, | ) | |
| | ) | MEMORANDUM OPINION |
| vs. | ) | AND ORDER |
| | ) | |
| CENTRAL INTELLIGENCE AGENCY, | ) | |
| et. al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

INTRODUCTION

Plaintiff, Adam Ciralsky, brought this action against Defendants, various individuals and Plaintiff's former employer, the Central Intelligence Agency ("CIA", or the "Agency"), for the following causes of action: (1) discrimination and retaliation under Title VII of the Civil Rights Act; (2) breach of employment contract; (3) improper disclosure and improper stewardship of federal agency records under the Privacy Act and (4) constitutional torts via a *Bivens* action. Pending before the Court is Defendants' Motion to Dismiss, for Judgment on the Pleadings, or for Summary Judgment as to Claims I – XVI and XIX – XX in response to Plaintiff's suit

containing twenty claims against eleven parties.[1]  Also pending is Plaintiff's cross-motion for discovery.

## BACKGROUND

Plaintiff, a Jewish male, was employed at CIA Headquarters in Langley, Virginia, through the CIA Legal Honors Program under a two-year contract starting December 2, 1996.  His position as an Attorney Advisor in the Agency's Office of General Counsel ("OGC") required a "top secret" security clearance.  Plaintiff had previously obtained the requisite clearance pursuant to his prior employment with the Department of Defense.

Shortly after he began working at the CIA, the Agency initiated a reinvestigation of Plaintiff's security clearance, administering a series of polygraph examinations and interviews to evaluate his fitness.  On August 19, 1997, Plaintiff failed a polygraph examination.  In the month following this polygraph session, various CIA employees interviewed Plaintiff on four separate occasions.  At one of these interviews on September 11, 1997, Plaintiff was given a laptop computer and told to use it to document and explain issues arising out of the failed polygraph session of August 19, 1997.  Plaintiff returned this laptop to the CIA on September 29, 1997. The veracity of Plaintiff's declarations in these interviews was tested through another polygraph examination on October 3, 1997.

As this reinvestigation unfolded, Plaintiff approached officials in the CIA's Office of Equal Employment Opportunity ("OEEO") to complain that he was being subjected to

---

[1] Defendants' motion does not address Plaintiff's Claims XVII and XVIII for withholding of records by the CIA and FBI in violation of the Privacy Act and the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552.  Based on a prior unopposed motion by Defendants, this Court granted an Order allowing Defendants to move for summary judgment with respect to Claim XVIII solely on the grounds that disclosure was unnecessary under 5 U.S.C. § 552(b)(1) because the records were not classified.  *See Order of August 8, 2005 by Judge Robertson*.  To date, no such motion has been filed by Defendants.

discriminatory treatment based on his religion.  In August 1997, he expressed that belief to

Defendant Anne Fischer, at that time the Legal Advisor and the Chief of the Complaints Staff at

the OEEO, in a meeting at her office.  On October 20, 1997, Plaintiff again raised his concerns

with Defendant Kathleen McGinn, Fischer's successor at the OEEO.

Following the reinvestigation, the CIA advanced the process of revoking Plaintiff's

security clearance.  On October 20, 1997, the CIA placed Plaintiff on administrative leave and

informed him that an employee review panel ("ERP") would reconsider his access to classified

information.  After Plaintiff submitted a memorandum defending himself, the ERP met on or

about November 21, 1997, and recommended that the CIA revoke Plaintiff's security clearance

and terminate his employment.  After reviewing two additional memoranda submitted by

Plaintiff in response to certain damaging information, the ERP maintained its initial

recommendation when it reconsidered the matter on March 6, 1998.  Records of both ERP

meetings describe the panel's concern to be Plaintiff's failure to disclose information about and

lack of candor regarding several contacts that were or may have been involved in the Israeli

security establishment.  *See* Pl.'s Mot. for Disc. Attach. 1 and 2 (official summaries of ERP

meetings).

Accordingly, CIA official Alan Wade revoked Plaintiff's security clearance on July 2,

1998.  Four days later, the CIA provided Plaintiff with a copy of the written explanation for this

decision (the "Wade Memorandum") as well as a copy, containing redactions, of the

investigative file upon which the decision was made.  On July 17, 1998, Plaintiff sent a letter to

the CIA seeking further relevant information under the Freedom of Information Act and the

Privacy Act.

Following his security clearance revocation, Plaintiff exercised further appeals to the responsible CIA official, Alan Wade, and a separate CIA appeals panel. While these appeals were pending and Plaintiff remained suspended from duty, the CIA twice extended his employment contract, but placed him on non-pay status effective March 1, 1999. At the time, Plaintiff had achieved at least the GS-11, step 1 salary of $37,094 per annum. Wade and the CIA appeals panel continued deliberating during this period, with both deciding to uphold revocation of Plaintiff's security clearance. The CIA finally terminated Plaintiff's employment on December 13, 1999.

These events and Plaintiff's allegations stirred much controversy. Beginning in June 1998, several major media outlets reported on the situation, with Plaintiff and his then-attorney often being interviewed. At one point, the Wade Memorandum was leaked to a *Washington Post* reporter. In addition, the CIA took two noteworthy actions in responding to Plaintiff's allegations of anti-Semitism. First, in June 1998 the CIA established a panel of five private citizens (the "Jacobs Panel") to probe certain CIA security clearance decisions, including Plaintiff's, and examine whether the Agency indeed had engaged in anti-Semitism. Second, Defendant George Tenet, at the time Director of Central Intelligence, wrote to the President of the United States officially to express the CIA's intolerance towards discrimination and inform him that while the Jacobs Panel found no anti-Semitism, it did identify instances of insensitivity that would be addressed through sensitivity training.

PROCEDURAL HISTORY

This case has already run a lengthy procedural gauntlet.  Plaintiff filed his initial
Complaint in this matter on July 19, 2000.  On February 27, 2001, this Court granted
Defendants' motion to strike the complaint, with leave to amend, for failure to provide "a short
and plain statement of the claim" under Fed. R. Civ. P. 8(a).  The Court again struck down
Plaintiff's amended complaint on December 28, 2001, for continued failure to comply with Rule
8(a), dismissing it without prejudice.  Plaintiff's request for leave to further amend his complaint
was denied on August 30, 2002.  On appeal, the Court of Appeals held that the Court had not
abused its discretion, but remanded the case to the Court to review whether Plaintiff should be
permitted to amend in light of circumstances of which it had been unaware pertaining to statutes
of limitations.  *Ciralsky v. CIA*, 355 F.3d 661 (D.C. Cir. 2004).  The Court subsequently allowed
Plaintiff to file his Second Amended Complaint and deemed it filed on June 9, 2004.  Defendants
filed their pending motion on August 23, 2004.

<u>DISCUSSION</u>

For purposes of adjudicating these motions, Plaintiff's claims break down into five
analytic categories, with Defendants offering various defenses:

1.      Discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964, 42
        U.S.C. § 2000e-2 *et seq.* (Claims VII and VIII).

2.      Breach of Plaintiff's employment contract by the CIA (Claim XIX).

3.      Improper disclosure of three records in violation of Section (b) of the Privacy Act, 5
        U.S.C. § 552a (Claim IX).

4.      Various improprieties in the stewardship of federal agency records under Section (e) of

the Privacy Act (Claims X – XVI).

5.      Constitutional torts (under *Bivens v. Six Unnamed Agents of the Fed. Bureau of Narcotics*, 403 U.S. 388 (1971)), conspiracy to violate civil rights under 42 U.S.C. §§ 1985-1986, and unlawful surveillance under the Foreign Intelligence Surveillance Act ("FISA"), 50 U.S.C. §§ 1801, *et seq.* (Claims I – VI and XX).


## STANDARD OF REVIEW

Defendants present their motion as a motion to dismiss, for judgment on the pleadings, or in the alternative for summary judgment.  As discussed in greater detail below, Defendants' motion states arguments variously under Federal Rules of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction, 12(b)(2) for lack of personal jurisdiction, 12(b)(3) for improper venue, and 56 for summary judgment.

In response, Plaintiff moves for discovery under Rule 56(f), as the parties have not yet had discovery.  In responding to a motion for summary judgment, if the nonmoving party "cannot for reasons stated present by affidavit facts essential to justify the party's opposition, the court . . . may order . . . discovery to be had . . . ."  Fed. R. Civ. P. 56(f).  Essentially, 56(f) allows the Court to delay or deny a motion for summary judgment as premature on the grounds that more discovery is necessary to rule on that motion.  *See Londrigan v. FBI*, 670 F.2d 1164, 1175 (D.C. Cir. 1981).

The Court will first consider Defendants' Rule 12(b)(1), 12(b)(2), and 12(b)(3) motions before reaching the parties' Rule 56 motions in the alternative.  This is because "a federal court must establish its jurisdiction to hear a case before adjudicating its merits."  *Marra v.*

*Papandreou*, 216 F.3d 1119, 1122 (D.C. Cir. 2000) (citing *Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83 (1998)). The Court exercises its own discretion in choosing the order in which it addresses the Rule 12(b)(1), 12(b)(2), and 12(b)(3) motions. *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 585 (1999) ("It is hardly novel for a federal court to choose among threshold grounds for denying audience to a case on the merits.").

To the extent the Parties submit matters outside the pleadings in support of their claims, those claims shall be adjudicated as a Rule 56 motion for summary judgment. *Fed.R.Civ.P. 12(b)*. Summary Judgment is appropriate when the pleadings and evidence before the court demonstrate "that there is no genuine issue as to any material fact and that the moving party ie entitled to a judgment as a matter of law." *Fed.R.Civ.P. 56( c)*. When adjudicating a summary judgment motion, a court must draw "all justifiable inferences" in the non-moving party's favor, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986), and the "factual allegations of the complaint must be taken as true." *Doe v. United States Dep't of Justice*, 753 F.2d 1092, 1102 (D.C. Cir. 1985). The court may "not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc*, 530 U.S. 133, 150 (2000). However, the non-moving party must establish more than "[t]he mere existence of a scintilla of evidence" in support of it position. *Anderson*, 477 U.S. at 252.

I.      **TITLE VII CLAIMS (CLAIMS VII AND VIII)**

In his Title VII claims, Plaintiff alleges that the revocation of his security clearance and his termination were predicated on anti-Semitic profiling in which the CIA subjected him to unwarranted harassment, discriminatory treatment, retaliation, and intimidation. According to

Plaintiff, the CIA suffers an institutional pattern of targeting Jews as a security risk based on a perception of divided loyalty between the United States of America and the State of Israel. Plaintiff asserts that the review of his security clearance and hearing of his appeals were a sham orchestrated by CIA officials who had pre-determined that Plaintiff was to be removed as a security threat based on his Jewish background.  Plaintiff claims that FBI officials were also involved in this process.  In Plaintiff's account, the polygraph tests were rigged and applicable disclosure requirements ignored so as to cook up an ostensible "lack of candor" as a pretext for firing him.  Plaintiff alleges that this mistreatment resulted in him not only wrongfully losing his job at the CIA, but also being prevented from his scheduled rotation to a position on the National Security Council.

Moreover, Plaintiff alleges that CIA officials frustrated his attempts to pursue administrative recourse for employment discrimination.  Rather than responding to his complaints to the OEEO and the Attorney General, Plaintiff states that the Agency retaliated by suspending him and revoking his clearance.  Plaintiff also charges that the CIA made veiled threats to his personal safety and threatened to attempt to have him disbarred if he filed the instant suit.

Title VII prohibits the federal government from discriminating against its employees on the basis of race, color, religion, sex, or national origin.  42 U.S.C. § 2000e-16(a).  Additionally, the federal government may not retaliate against an individual who invokes Title VII rights. *Forman v. Small*, 271 F.3d 285, 297 (D.C. Cir. 2001) ("§ 2000e-16, in which Congress waived sovereign immunity for claims under Title VII, includes a claim for retaliation.").  Plaintiff claims that the reinvestigation, revocation, and termination targeted him as a Jew and that he

additionally suffered retaliation when he complained about this discrimination.

Defendants attack Plaintiff's Title VII claims on two grounds. First, Defendants contend that these claims are non-justiciable because they would force the Court to interfere with the CIA's protected discretion in its security clearance decisions. Second, Defendants assert that Plaintiff's Title VII claims are defective because he neglected the procedural prerequisite of reporting his grievance to an EEO Counselor to attempt administrative resolution.

A.    Are the Title VII Claims Justiciable?

The controlling law in this Circuit is that "an adverse employment action based on denial or revocation of a security clearance is not actionable under Title VII." *Ryan v. Reno*, 168 F.3d 520, 524 (D.C. Cir. 1999).[2] See also *Weber v. United States*, 209 F.3d 756, 760 (D.C. Cir. 2000) ("[T]he general presumption of reviewability of agency action does not apply to security clearance decisions."). This rule follows from *Dep't of the Navy v. Egan*, 484 U.S. 518 (1988), where the Supreme Court expressed its reluctance to permit substantive judicial review of Executive Branch decisions on security clearances:

> [T]he protection of classified information must be committed to the broad discretion of the agency responsible, and this must include broad discretion to determine who may have access to it. Certainly, it is not reasonably possible for an outside nonexpert body to review the substance of such a judgment and to decide whether the agency should have been able to make the necessary affirmative prediction with confidence. *Id.* at 529.

Within the Title VII context, *Ryan* effectively shields a federal agency from judicial scrutiny of the security clearance process. In *Ryan*, this Circuit upheld the dismissal of a Title

_____

[2] With this opinion, this Circuit joined the position of other federal circuits. *See Becerra v. Dalton*, 94 F.3d 145, 148 (4th Cir. 1996); *Perez v. FBI*, 71 F.3d 513, 514-15 (5th Cir. 1995); *Brazil v. United States Dep't of the Navy*, 66 F.3d 193, 197 (9th Cir. 1995).

VII complaint against two federal agencies by dual Irish-American citizens who alleged that their offers of employment were withdrawn on the basis of national origin and citizenship.  The agencies defended the rescinded offers, explaining that because the applicants had spent much time living abroad, it was impossible to investigate their backgrounds adequately and therefore the required security clearances could not be granted.  *Ryan*, 168 F.3d at 521.  Confronted with this explanation, the district court correctly concluded that it lacked jurisdiction to review the complaint because scrutiny of security clearance procedures inescapably compels a pronouncement on the validity of security clearance decisions.[3]  *Id*. at 523-24.

Defendant argue that *Ryan* governs the instant case.  According to Defendants, if the Court were to consider the merits of Plaintiff's Title VII claims, it would have to pass judgment on the merits of the CIA's decision to revoke Plaintiff's security clearance, which *Ryan* prohibits.  Therefore, Defendants argue that the Court must dismiss these claims as non-justiciable.

While acknowledging the general immunity that *Ryan* affords, Plaintiff tries to distinguish his Title VII claims such that *Ryan* would not apply.  He asks the Court to review not the CIA's decision to revoke his security clearance, but its decision to fire him, which is one step removed from the security clearance decision.  Accordingly, his complaint concerns not whether the CIA properly evaluated security considerations in revoking his clearance, but whether the revocation, and hence his termination, were based on security concerns at all.

---

[3]Further application of *Ryan* has cemented this principle.  *Boykin v. England*, No. 02-950 2003 U.S. Dist. LEXIS 13350 (D.D.C. July 16, 2003).  In *Boykin*, the district court found that this immunity from judicial scrutiny of security clearance decisions warranted dismissing the Title VII complaint of an employee of the Department of the Navy who alleged that revocation of his security clearance and consequent suspension from his job were based on racial discrimination. *Id*.

In support of such a distinction, Plaintiff cites to *Jones v. Ashcroft*, 321 F.Supp.2d 1, 7-9 (D.D.C. 2004).  In that case, the Court found it had jurisdiction to review the Title VII complaint of a prospective employee whom the FBI declined to hire after finding her unsuitable based on a routine background investigation.  The FBI claimed that is finding of unsuitability was protected as a security matter, but the court found no evidence that security concerns played any role at all. *Id*. at 8.  Indeed, the FBI had found the candidate unsuitable for employment based not upon a predictive assessment of whether she would jeopardize national security, but instead on "her perceived lack of forthrightness." *Id.*  Ultimately, because *Jones* did not implicate national security, that court concluded that *Ryan* did not block her Title VII claims.  *Id.*

Relying on *Jones,* Plaintiff contends his present case merits similar treatment.  He alleges that the CIA's alleged basis for firing him was his "lack of candor."  Second Am. Compl. ¶ 29. Therefore, Plaintiff concludes that his termination was unrelated to security concerns and *Ryan* does not bar his Title VII claims.

After consideration this Court concludes that Plaintiff's argument fails because the CIA's decisions on his security clearance and termination cannot be viewed as unrelated events.  In stark contrast to *Jones*, it can hardly be said that there is "no evidence before this Court to indicate that the government, at any time prior to the commencement of this lawsuit, considered national security as a basis for its decision not to [employ] the plaintiff." *Jones*, 321 F. Supp. 2d at 8.  First, as Defendants note, Plaintiff himself has pled that his firing was predicated on security considerations, even if those concerns may have been misguided: ". . . [Plaintiff] had his security clearance revoked and was fired by the CIA purely on account of the Agency's suspicion that as a Jew he posed a *special security risk* because of a perceived divided loyalty to both the

United States of America and the State of Israel."  Second Am. Compl. ¶ 17 (emphasis added).

Plaintiff further alleges that "the CIA and FBI assumed that [he] was a disloyal American and

should be treated as [a] security risk."  *Id*. at ¶ 18.  In this vein, it is noteworthy that, in contrast

to *Jones*, Plaintiff was investigated not as part of a mere background check, but a more stringent

security clearance review.

Second, the sequence of events conflicts with the idea that Plaintiff's termination and the

revocation of his security clearance were unconnected.  The CIA held off from terminating

Plaintiff until it had completed a lengthy formal process of reviewing his security clearance and

hearing his appeals, and then fired him immediately once the revocation was finalized.  While the

Court cannot, for purposes of this motion, infer that the CIA identified Plaintiff as a security

threat and correspondingly fired him, the Court does recognize that making the opposite

inference in favor of the Plaintiff forces the Court into an area where it may not tread.  In order to

validate Plaintiff's allegation – that the CIA staged a bogus security clearance review as a pretext

for removing Plaintiff on other grounds – the Court would be forced to consider the merits of the

CIA's security clearance decision.  To determine whether the CIA review was a charade, the

Court would have to examine and declare what grounds the CIA identified and whether they

should have properly provoked security concerns.  Such substantive judicial review of a CIA

security clearance decision is precisely what *Ryan* forbids.[4]

---

[4]Of course, if Plaintiff were able to present some unequivocal evidence that the CIA's
review as a mere pretext, the Court would not be required to engage in a substantive review of
the security clearance decision.    However, Plaintiff has not produced such evidence, nor does he
appear able to do so.  Nor has Plaintiff demonstrated that discovery could yield the necessary
evidence.  The Court further notes that, even accepting *arguendo* Plaintiff's allegations that CIA
files and communications regarding him exhibit stereotypes and prejudices that disfavor Jews,
that fact taken alone, would be insufficient to prove that the reinvestigation, revocation and

Third, a recent D.C. Circuit opinion, *Bennett v. Chertoff*, 425 F.3d 999 (C.A.D.C. 2005), postdating the Parties' briefs casts further doubt on Plaintiff's ability to draw a distinction between his security clearance revocation and termination.  In *Bennett*, Plaintiff also made the argument that "the court retains jurisdiction to determine whether her employment was actually terminated because of national security concerns even if the court cannot review the underlying merits of that determination." *Id.* at 1000.  Like Plaintiff, Bennett had also previously received a security clearance from the Department of Defense, but was denied a security clearance by the Transportation Security Administration and then fired.  Also similar to Plaintiff's alleged "lack of candor" basis for his termination, Bennett was fired for general unsuitability rather than definite, stated security reasons.

Yet the D.C. Court of Appeals found that "Bennett's alleged dishonesty could render her both unsuitable for federal employment and ineligible for a security clearance, even if the two determinations are distinct." *Id.* at 2002.  Naturally, lack of candor reflects just as poorly on whether a person cab be trusted with security secrets as well as whether they can be an effective employee.  Therefore, there was "substantial evidence in the record that the agency's action was premised on Bennett's inability to maintain a security clearance," leading the Court of Appeals to apply *Ryan* and affirm the district court's dismissal of Bennett's Title VII as non-reviewable.  *Id.* at 1000.

Comparing *Bennett* to our instant case, by alleging that the CIA fired him for lack of candor, Plaintiff acknowledges the existence of a valid CIA justification for their denial of his

---

termination were based solely on bigotry rather than, at least in part security concerns.  Plaintiff needs something more to show that the review was a total pretext based purely on discriminatory animus and entirely unrelated to any security concerns.

security clearance.  As in *Bennett*, this Court cannot judge the merits of that decision.

Thus, even accepting Plaintiff's allegations entirely, his Title VII claims inextricably implicate the merits of the CIA's decision to revoke his security clearance.  The Court therefore cannot adjudicate these claims under *Ryan*.  For the reasons stated above, The Court GRANTS Defendants' motion to dismiss the Title VII claims (Claims VII and VIII) for lack of subject matter jurisdiction, and DENIES Plaintiff's motion for discovery as to these claims.  Further, because Plaintiff's Title VII claims are non-justiciable, the Court need not reach the question of whether Plaintiff exhausted his administrative remedies.

III.   **CLAIM FOR BREACH OF EMPLOYMENT CONTRACT (CLAIM XIX)**

Plaintiff claims that the CIA breached his employment contract by extending his term of service without paying him.  Defendants respond to this claim with two defenses.  First, Defendants argue that this Court lacks subject matter jurisdiction because the Court of Federal Claims exercises exclusive jurisdiction over breach of contract claims against the federal government for amounts over $10,000.  Second, Defendants contend that the CSRA governs Plaintiff's claim exclusively and provides that a CIA employee is not entitled to judicial review of claims arising out of suspension or termination.

A.   <u>Can this Court Exercise Jurisdiction over Plaintiff's Contract Claim?</u>

This Circuit has held that "[t]he sole remedy for an alleged breach of contract by the federal government is a claim for money damages, either in the United States Claims Court under the Tucker Act, 28 U.S.C. § 1491(a)(1) (1982), or, if damages of no more than $10,000 are

sought, in district court under the Little Tucker Act, 28 U.S.C. § 1346(a)(2) (1982)." *Sharp v. Weinberger*, 798 F.2d 1521, 1523 (D.C. Cir. 1986).[5]  Statutorily, the Court of Federal Claims has "jurisdiction to render judgment upon any claim against the United States founded . . . upon any express or implied contract with the United States . . . ." 28 U.S.C. § 1491(a)(1).

Concurrent with the Court of Federal Claims, the district courts have jurisdiction over any "claim against the United States, not exceeding $10,000 in amount, founded . . . upon . . . any express or implied contract with the United States . . . ." 28 U.S.C. § 1346(a)(2).  It follows that "[t]hese laws place the exclusive jurisdiction to hear contract disputes with the Court of Federal Claims, explicitly depriving federal district courts from hearing such cases, when the amount in controversy . . . exceeds $10,000." *Info. Sys. & Networks Corp. v. United States HHS*, 970 F. Supp. 1, 4 (D.D.C. 1997); *see also Waters v. Rumsfeld*, 320 F.3d 265, 270 n.6 (D.C. Cir. 2003) (citing *Bowen v. Massachusetts*, 487 U.S. 879, 910 n.48 (1988)).

In this case, the Court lacks subject matter jurisdiction over Plaintiff's breach of contract claim because Plaintiff's claim exceeds $10,000.  Plaintiff's prayer for relief asks the Court to award him "back pay in the amount equal to the salary withheld by the CIA after he was involuntarily placed in a leave without pay status beginning March 1, 1999 to the present, with interest thereon."  Second Am. Compl. p. 27, ¶ p.  Even excluding interest and limiting the damages to the period between Plaintiff's suspension and termination, this claim amounts to

---

[5] The United States Claims Court was renamed the United States Court of Federal Claims in 1992.

$29,268.69.[6]  Therefore, this Court cannot hear this claim.  Plaintiff has not substantively

disputed this point.

Therefore, the Defendants' Motion to Dismiss Plaintiff's Breach of Employment Contract

claim (Claim XIX) is GRANTED for lack of subject matter jurisdiction.  Plaintiff's Claim XIX

shall be DISMISSED WITHOUT PREJUDICE.   Plaintiff's Motion for discovery on this claim

is DENIED.


IV.   IMPROPER DISCLOSURE UNDER 5 U.S.C. § 552A(B)(CLAIM IX)

Plaintiff's Privacy Act claims allege numerous abuses of his privacy rights in the CIA's

handling of his records.  According to Plaintiff, the CIA committed violations by disclosing

official records pertaining to him to uninvolved government officials, the Jacobs Panel, and the

*Washington Post* journalist.

Plaintiff claims that the CIA violated his rights under § 552a(b) of the Privacy Act (the

"Act"), 5 U.S.C. § 552a, through three separate disclosures of the contents of his investigative

file to the Jacobs Panel, the *Washington Post*, and other government officials.  The Privacy Act

regulates how a federal agency keeps records on individuals.  With allowances for use in the

ordinary course of agency business and other defined purposes, the Act generally prohibits

disclosure to outside entities of "any record which is contained in a system of records . . . ."  5

U.S.C. § 552a(b).  A "record" is defined as "any item, collection, or grouping of information

---

[6] This figure is arrived at by pro-rating Plaintiff's annual salary of $37,094 for the 288-
day period of March 1, 1999 to December 13, 1999.  When a plaintiff fails to claim a specific
amount, a court may infer the amount claimed to determine whether that amount satisfies
jurisdictional requirements.  *Powell v. Castaneda*, 390 F. Supp. 2d 1, 7 (D.D.C. 2005).

about an individual that is maintained by an agency . . . ."  § 552a(a)(4).  A "system of records" is

defined as "a group of any records under the control of any agency from which information is

retrieved" by the individual's name or personal identifier.  § 552a(a)(5).  When an agency

violates a requirement of the Privacy Act, an adversely affected individual may bring a civil

action against it.  § 552a(g)(1)(C)-(D).  Only when "the court determines that the agency acted in

a manner which was intentional or willful" will the United States be liable for damages.  §

552a(g)(4).

Defendant CIA offers several defenses to Plaintiff's claim of improper disclosure,

challenging each of the three alleged disclosures individually.  With respect to the Jacobs Panel

disclosure, the CIA contends that Plaintiff's claim is time-barred and that the disclosure was

statutorily permissible.  Regarding the alleged *Washington Post* disclosure, the Agency maintains

that Plaintiff sustained no cognizable injury.  Finally, the CIA argues that Plaintiff's allegation of

disclosure to unspecified government officials is too vague to state a claim.


A.      *Jacobs* Panel Disclosure

1.      ***Is Plaintiff's Claim for the Jacobs Panel Disclosure Time-Barred?***

Ordinarily, the statute of limitations under the Privacy Act is two years.

5 U.S.C. § 552a(g)(5).   That Act provides that:

An action to enforce any liability created under this section may be brought . . .
within two years from the date on which the cause of action arises, except that
where an agency has materially and willfully misrepresented any information
required under this section to be disclosed to an individual and the information so
misrepresented is material to establishment of the liability of the agency to the
individual under this section, the action may be brought at any time within two

yeas *after* discovery by the individual of the misrepresentation.

This statute of limitations is informed by three important interpretations. First, the cause of action arises and the statute of limitations begins to run when "the plaintiff knows or should know of the alleged violation." *Tijerina v. Walters*, 821 F.2d 789, 798 (D.C. Cir. 1987). See also *Diliberti v. United States*, 817 F.2d 1259, 1262 (7th Cir. 1987). Second, the statute of limitations may be equitably tolled in certain cases, "most commonly when the plaintiff despite all due diligence . . . is unable to obtain vital information bearing on the existence of his claim." *Chung v. DOJ*, 333 F.3d 273,278 (D.C. Cir. 2003). Third, a "Privacy Act claim is not tolled by continuing violations." *Davis v. United States Dep't of Justice*, 204 F.3d 723, 726 (7th Cir. 2000) (citing *Diliberti*, 817 F.2d at 1263); see also *Doe v. Thompson*, 332 F. Supp. 2d 124, 133 (D.D.C. 2004).

Defendant CIA argues that Plaintiff knew or should have known of all the alleged *Jacobs* Panel disclosure over two years before he filed his initial complaint on July 19, 2000. Plaintiff's then-attorney sent a letter to the CIA dated July 17, 1998, stating that "a senior Administration official" had made him aware that Plaintiff's case "was reviewed by a group of individuals other than those sitting on the ERP" and requesting "any and all documents used in such review." Suppl. Decl. of Alvina E. Jones ¶¶ 8-9. Defendant CIA contends this letter shows that Plaintiff knew or should have known as of July 17, 1998, that the alleged disclosure to the Jacobs Panel had occurred in violation of § 552a(b) of the Privacy Act.[7] Moreover, the CIA argues, even if

_____

[7] The Court notes that the letter of July 17, 1998, is not as clear-cut as Defendant CIA characterizes it. While the cited language of the letter indicates awareness that unauthorized individuals were possibly examining Plaintiff's records, it does not expressly demonstrate that Plaintiff knew that those individuals were members of the *Jacobs* Panel.

other alleged disclosures to the *Washington Post* and other government officials occurred after

that date, they would be irrelevant to the timeliness of Plaintiff's claim for the Jacobs Panel

disclosure, because continuing violations do not extend the statute of limitations.   *Diliberti*, 817

F.2d at 1263.   Thus, according to Defendant CIA, Plaintiff's claim brought two years and two

days after the letter is time-barred.

  The Court rejects Defendant CIA's argument, even though there is precedent to suggest

that the letter of July 17, 1998 would ordinarily toll the statute of limitations.   In *Diliberti*, the

Seventh Circuit stated that "unsubstantiated hearsay and rumors, which alerted [the plaintiff] . . .

that the defendants might be maintaining a secret file on him [in violation of the Privacy Act],

were sufficient to trigger the statute of limitations.   *Id.*, 817 F.2d at 1263.

  However, Defendant CIA does not address Plaintiff's argument that by allegedly denying

his request of July 17, 1998, for pertinent information confirming his suspicion, *see* Second Am.

Compl. ¶¶ 58-62, the CIA committed a material and willful misrepresentation of information

required to be disclosed to Plaintiff and material to establishing the liability of the Agency to

him. See *Pope v. Bond*, 641 F. Supp. 489, 500 (D.D.C. 1986) (Federal Aviation Administration

committed willful and material misrepresentation that stayed running of statute of limitations

when it repeatedly denied employee access to files containing evidence of violations).   Taking

the factual allegations of the complaint as true, such misrepresentation delays the start of the

limitations period well past July 17, 1998, so that the Plaintiff's claim based on the *Jacobs* Panel

Disclosure is not time-barred.

   2.  ***Is the Alleged Disclosure to the Jacobs Panel Statutorily Permissible?***

While protecting individuals generally from having their records disclosed, § 552a(b) contains twelve exceptions allowing agencies to disclose records for specified purposes. Defendant CIA argues that the alleged disclosure to the *Jacobs* Panel is authorized under two of those exceptions: § 552a(b)(1) allowing intra-agency disclosure when needed for the performance of duties: and § 552a(b)(3) allowing disclosure for a routine, notified use for which purpose the record was collected.

§ 552a(b)(1) permits disclosure "to those officers and employees of the agency which maintains the record who have a need for the record in the performance of their duties." Defendant CIA contends that it fell within the scope of such authorized intra-agency disclosure to disclose Plaintiff's records to the *Jacobs* Panel, a group of Agency contractors engaged specifically to conduct an official CIA investigation into allegations of anti-Semitism at the Agency.   Plaintiff retorts that § 552a(b)(1) is no shield because the *Jacobs* Panel members cannot properly be termed "officers and employees" of the CIA under the plain language of the statute.

The weight of precedent regarding whether a contractor is an "employee" under § 552a(b)(1) favors Defendant CIA.  See *Mount v. United States Postal Serv.*, 79 F.3d 531, 532, 533 (6th Cir. 1996) (describing "physician under contract with [United States Postal Service]" as an employee or agent of Postal Service under § 552a(b)(1)); *Coakley v. United States Dep't of Transp.*, No. 93-1420, 1994 U.S. Dist. LEXIS 21402 (D.D.C. Apr. 7, 1994) (Department of Transportation properly disclosed employee's records to independent contractor serving as EEO investigator for employee's EEO complaint).

These cases give clear guidance.  In *Coakley*, the court held that "while the EEO

investigator was an independent contractor, he must be considered an employee of [the

Department of Transportation] for Privacy Act purposes.  Given that the disclosure in question

occurred in connection with an official agency investigation of Plaintiff's discrimination

complaint, the disclosure must be considered an intra-agency communication under the Act."

*Coakley*, 1994 U.S. Dist. LEXIS 21402 at *3-4.  The analogy to the instant case is obvious; it is

not disputed that the *Jacobs* Panel members were independent CIA contractors conducting an

official investigation at least partially in response to Plaintiff's complaints about discrimination.

"Section 552a(b)(1) does not require an agency to list those of its officers eligible to look

at protected records, nor does it demand that an agency official be specifically assigned to

examining records. What must be determined . . . is whether the official examined the record in

connection with the performance of duties assigned to him and whether he had to do so in order

to perform those duties properly."  *Bigelow v. Dep't of Defense*, 217 F.3d 875, 877 (D.C. Cir.

2000).  Therefore, this Court concludes that the disclosure of Plaintiff's records to the *Jacobs*

Panel is a permissible intra-agency disclosure.

Consequently, this Court need not reach Defendant CIA's alternative argument that the

disclosure was allowed as a "routine use" under § 552a(b)(3).  Therefore, as to Plaintiff's claim

of improper disclosure to the *Jacobs* Panel, the Court GRANTS Defendant CIA's summary

judgment motion of this claim, and DENIES Plaintiff's request for discovery as to this claim.


B.      *Washington Post* Disclosure

"[P]laintiffs seeking monetary relief under the Privacy Act must show *actual* damages."

*Maydak v. United States*, 363 F.3d 512, 521 (D.C. Cir. 2004) (citing *Doe v. Chao*, 540 U.S. 614,

627 (2004)).  In *Doe,* the Supreme Court left open the precise definition of "actual damages" – whether it is "restricted to pecuniary loss" or also includes "adequately demonstrated mental anxiety even without any out-of-pocket loss" – for Courts of Appeals to decide.  *Id.*, 540 U.S. at 627 n.12.  In this Circuit, this definition remains unresolved.  See *Montemayor v. Fed. Bureau of Prisons*, No. 02-1283, 2005 U.S. Dist. LEXIS 18039, at *14-15 (D.D.C. Aug. 25, 2005) (discussing various interpretations at the District Court level).  However, it is undisputed that if a plaintiff can show neither pecuniary or emotional damages, then there is no injury upon which a court can grant monetary relief under the Privacy Act.  See, e.g., *Dodge v. Trs. of the Nat'l Gallery of Art*, 326 F. Supp. 2d 1, 12 (D.D.C. 2004); *Foncello v. United States Dep't of the Army*, 2005 WL 2994011, at *12-13 (D.Conn. Nov. 7, 2005)

In light of these precedents, Defendant CIA correctly contends that the alleged disclosure to the *Washington Post* is not a claim upon which the Court can grant relief.  Plaintiff has not even alleged, let alone demonstrated, that he suffered a pecuniary or emotional injury arising out of this specific alleged disclosure.  Plaintiff's argument that it is for a jury to decide the *extent* of damages overlooks the salient point that in defending against a motion for summary judgment he nonetheless must show the *existence* of damages.  Indeed, Plaintiff's sole evidence of injury arising out of this disclosure is a bare assertion that the disclosed Wade Memorandum contained misleading information that had not previously appeared anywhere in the media.  Decl. of Adam J. Ciralsky ("Ciralsky Decl.") ¶¶ 15, 22.  Nowhere does Plaintiff describe how such disclosure detrimentally affected him.  Instead, his pleading and brief seem to assume that a wrongful disclosure entitles him to relief without having to plead any actual damages.[8]  Absent a pleading

---

[8]Confronted with a similar situation in *Foncello*, that court held that:

of actual damages from disclosure to the *Washington Post*, the Court finds that Plaintiff has failed to state a claim under the Privacy Act upon which relief can be granted.

Therefore, Defendant CIA's motion for summary judgment as to Plaintiff's claim of improper disclosure to the *Washington Post* is GRANTED and Plaintiff's motion for discovery as to this claim is DENIED.

C.      Disclosure to "Other Government Officials"

Plaintiff claims that "Defendants disclosed the contents of [his investigative file] to other government officials who were neither responsible for nor in any way involved with the handling of [his] case within the CIA." Second Am. Compl. ¶ 45. Contending that this allegation involving unspecified government officials does not include the operative facts and give fair notice of the basis for the claim, Defendant CIA asks the Court to discard it for vagueness.

However, Defendant CIA does not need to know the identities of the alleged recipient government officials to understand Plaintiff's charge. Indeed, providing such identities might stray into the presentation of evidence in the complaint that Defendants and this Court have emphatically cautioned Plaintiff to avoid.[9] As Plaintiff suggests, these identities are evidentiary

---

The Plaintiff's statement of "damages" merely summarizes the alleged violations of law. In effect, to the extent it states a harm, the harm is the violation of the statute. The requirement of an "adverse effect" requires more. [The plaintiff] does not allege that he suffered physical or mental harm or injury as a result of these violations. Thus, [the plaintiff] has not pled any "adverse effect" resulting from the Army's alleged violations of [the Privacy Act]. *Foncello*, 2005 WL 2994011, at *13 (D.Conn. Nov. 7, 2005).

[9]Moreover, Plaintiff's Complaint has been dismissed twice for failure to provide a "short and plain statement of the claim" pursuant to Fed.R.Civ.P. 8(a). In directing the Plaintiff to file a less detailed pleading, the Court observed that "the [initial] complaint is a discursive account containing a mass of detail more appropriate for trial . . ." *Ciralsky v. CIA,* Order (D.D.C. Feb.

specifics that Defendant CIA can obtain through discovery.  The allegation is not unacceptably vague.

    D.    <u>CONCLUSION</u>

    For the reasons stated above, the Court GRANTS Defendant CIA's motion for summary judgment and DENIES Plaintiff's motion for discovery with respect to alleged disclosures to the Jacobs Panel and to the Washington Post within Claim IX.  The alleged disclosure of Plaintiff's records to the Jacobs Panel was permissible under § 552a(b)(1) of the Privacy Act, while the allegation of disclosure to the Washington Post fails to state a claim upon which relief can be granted because Plaintiff alleged no injury.  As for the allegation in Claim IX of disclosure to other government officials, the Court DENIES summary judgment at this time and GRANTS Plaintiff's motion for discovery.

**V.    MISMANAGEMENT OF RECORDS UNDER 5 U.S.C. § 552A(E)(CLAIMS X – XVI)**

    Plaintiff alleges that over the course of the reinvestigation, revocation, and termination, the CIA mismanaged records kept on him.   According to Plaintiff, the CIA (1) maintained records on his race and religion; (2) how he exercised his First Amendment rights; (3) kept records outside of official record-keeping systems in a calculated effort to prevent him from obtaining them; (4) did not provide him requested records in a timely manner; (5) unnecessarily classified information to conceal wrongdoing; (6) redacted records in a way that prevented him from knowing how much was being withheld; (7) created records that misquote him; (8) disseminated these unreasonably

---

27, 2001).

flawed records; (9) failed to supervise employees in charge of these records; and (10) lacked appropriate safeguards to prevent such breakdowns.  Plaintiff claims that these CIA actions and omissions were willful and intentional, constituting several violations of § 552a(e) of the Privacy Act, which provides agencies with directives for the stewardship of records.

Among others, these directives include that an agency shall: (1) "maintain in its records only such information about an individual as is relevant and necessary to accomplish a purpose of the agency," § 552a(e)(1); (2) "publish in the Federal Register upon establishment or revision a notice of the existence and character of the system of records," § 552a(e)(4); (3) "maintain all records which are used by the agency in making any determination about any individual with such accuracy, relevance, timeliness, and completeness as is reasonably necessary to assure fairness to the individual in the determination," § 552a(e)(5); (4) "prior to disseminating any record about an individual to any person other than an agency . . . make reasonable efforts to assure that such records are accurate, complete, timely, and relevant for agency purposes," § 552a(e)(6); (5) with certain exceptions "maintain no record describing how any individual exercises rights guaranteed by the First Amendment," § 552a(e)(7); (6) "establish rules of conduct for" and provide instruction to "persons involved in the design, development, operation, or maintenance of any system of records, or in maintaining any record," § 552a(e)(9); and (7) "establish appropriate administrative, technical, and physical safeguards to insure the security and confidentiality of records."  § 552a(e)(10).  Defendant CIA contests these claims on the grounds that they are all time-barred and Claims XV and XVI are too conclusory to state a claim.

A.    Are the Claims Untimely?

Defendant CIA contends that the statute of limitations for these claims was triggered on July 6, 1998, when the CIA passed the Wade Memorandum and investigative file to Plaintiff. According to Defendant CIA, Plaintiff's allegations are based in whole or in part on the information contained in those documents, which gave him either knowledge or reason to know of the alleged violations.  Defendant CIA's evidence for this conclusion are statements made in Plaintiff's initial complaint.[10]

The Court accepts Defendant CIA's argument only as to Claim XII for violation of § 552a(e)(5), which Plaintiff's initial complaint explicitly states was based upon the information he received on July 6, 1998.  Init. Compl. ¶¶ 293, 296.  Indeed, Plaintiff contends that CIA maintenance of his records was not accurate, complete, relevant, or timely based on the allegedly excessive and disingenuous redactions contained in the records provided to him on that date.  *See also* Second Am. Compl. ¶ 51.  Undoubtedly, Plaintiff attained knowledge of the alleged violation on that day, and any misrepresentation by the CIA would be immaterial to establishing the Agency's liability because Plaintiff already possessed the necessary evidence.  Therefore, this claim brought on July 19, 2000, over two years after the statute of limitations was triggered on July 6, 1998, is time-barred.

The Court cannot rule that the other Privacy Act claims, Claims X-XI and XIII-XVI, are

---

[10] Though the initial complaint was stricken, Defendants remain free to rely on its contents as persuasive evidence. *See Smiths Am. Corp. v. Bendix Aviation Corp*, 140 F. Supp. 46, 53-54 (D.D.C. 1956) ("[w]hen a pleading is amended or withdrawn, the superseded portion ceases to be a conclusive judicial admission; but it still remains as a statement once seriously made by an authorized agent, and as such it is competent evidence of the facts stated." (quoting *Kunglig Jarnvagsstyrelsen v. Dexter & Carpenter, Inc.*, 32 F.2d 195, 198 (2d Cir. 1929))).

similarly time-barred.  While these other claims in the initial complaint also make overt or indirect references to various CIA documents in Plaintiff's possession (some even explicitly provided to Plaintiff by the CIA), the Court is unable to conclude that all of the referenced documents were part of the handover of Plaintiff's investigative file on July 6, 1998.  Neither party has submitted to the Court a precise list of what documents were included in that exchange and what information those documents contained, or indicated whether Plaintiff might have obtained CIA documents other than through the transfer on July 6, 1998.  The Court is left to draw inferences about whether these claims are based on the release to Plaintiff of his investigative file.  On this motion for summary judgment, the Court must make those inferences in favor of Plaintiff as the non-moving party and assume that the documents referred to in Claims X-XI and XIII-XVI were not part of the exchange on July 6, 1998, and thus that the statute of limitations was not triggered on that date.[11]

### B.    Are Plaintiff's Allegations in Claims XV and XVI Too Conclusory to State a Claim?

A "court need not accept inferences drawn by plaintiffs if such inferences are unsupported by the facts set out in the complaint.  Nor must the court accept legal conclusions cast in the form of factual allegations." *Kowal v. MCI Commc'ns. Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994) (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).  Defendant CIA urges the Court to dismiss Claims XV and XVI, arguing that rather than making factual allegations, they are legal conclusions that basically repeat the statutory language of § 552a(e)(9) and § 552a(e)(10) under which the

---

[11]Defendant CIA relies on its arguments regarding the disclosure to the *Jacobs* Panel to contend that Claims XV and XVI are time-barred.  However, for the same reasons that disclosure to the *Jacobs* Panel in Claim IX was not time-barred, these claims are not untimely.

claims are brought.[12]

The Court rejects Defendant CIA's argument.  After review and consideration, the Court

concludes that Claims XV and XVI rest upon inferences that plausibly flow from the factual

allegations laid out in the claims themselves as well as the complaint as a whole.  Whether those

inferences may turn out to be unfounded is irrelevant at this stage; what matters is only that

Plaintiff has pled those claims sufficiently.  Indeed, "a trial court should not grant [a motion]

simply because it is dubious of the plaintiff's ability to prove the allegations of the complaint at

trial."  *Haynesworth v. Miller*, 820 F.2d 1245, 1254 n.73 (D.C. Cir. 1987).  To the contrary, on

such a motion "the plaintiff enjoys the benefit of all inferences that plausibly can be drawn from

well-pleaded allegations of the complaint."  *Id.* at 1254.

Claims XV and XVI are not "plaintiff's bare conclusions of law, or sweeping and

---

[12] Claim XV reads:
The CIA failed to maintain certain records concerning `Ciralsky covered by` the Privacy Act within specific record systems, failed to maintain accurate or complete accountings of certain disclosures with respect to each system of records under its control, and improperly disclosed protected information concerning Ciralsky.  The CIA has failed to instruct its officers and employees about the proper operation and maintenance of the systems of records containing Ciralsky's records, the rules and requirements of the Privacy Act, and the penalties for noncompliance in violation of 5 U.S.C. § 552a(e)(9).  Second Am. Compl. ¶ 56.

Claim XVI reads:
The CIA's improperly disclosing Ciralsky's records as described in this complaint constituted a violation of Section (e)(10) of the Privacy Act.  Such improper disclosure is evidence that the CIA has negligently or intentionally failed to abide by that section's statutory requirement that demands requires [sic] agencies to create and maintain 'appropriate administrative, technical and physical safeguards to insure the security and confidentiality of records and to protect against any anticipated threats or hazards to their security or integrity which could result in substantial harm, embarrassment, inconvenience, or unfairness to any individual on whom information is maintained.'  Second Am. Compl. ¶ 57.

unwarranted averments of fact . . ." *Id.*  If the CIA's handling of Plaintiff's records involved

various breakdowns and misconduct as alleged in the first sentence of Claims XV and throughout

the Complaint, then it can be plausibly inferred that the CIA did not properly establish rules of

conduct for and provide instruction to the responsible Agency employees as required by       §

552a(e)(9), or else these failures would not have occurred.  *See* Second Am. Compl.  ¶ 56 and

throughout Complaint.  Likewise, given the same alleged breakdown and misconduct, it is

conceivable that the CIA did not establish adequate safeguards to protect the records, as such

safeguards might be expected to prevent the alleged improper disclosures.  *See* Second Am.

Compl.  ¶ 57 and throughout Complaint.  Therefore, Claims XV and XVI are not too conclusory to

state a claim.


   C. <u>Conclusion</u>

  For the reasons stated above, Defendant CIA's motion for summary judgment is

GRANTED and Plaintiff's motion for discovery is DENIED on Claim XII.   As for the other

remaining claims under § 552a(e) of the Privacy Act (Claims X – XI, XIII – XVI), Defendant

CIA's motion for summary judgment is DENIED and Plaintiff's motion for discovery is

GRANTED.


## VI. CIVIL CLAIMS UNDER *BIVENS,* 42 U.S.C. §§ 1985-1986, AND FISA (CLAIMS I – VI AND XX)

  Finally, Plaintiff makes several allegations pursuant to his claims under *Bivens*, 42 U.S.C.

§§ 1985-1986, and FISA.  In his *Bivens* claims, Plaintiff contends that through the course of the

reinvestigation, revocation, and termination, several CIA and FBI officials violated his rights under

the First, Fourth, and Fifth Amendments.  Additionally, Plaintiff charges in his §§ 1985-1986

claim that these officials conspired to prevent him from performing his official duties and deprive

him of his civil rights.  Plaintiff's FISA claim alleges that the CIA used the laptop given to him at

the investigatory interview on September 11, 1997, to conduct illegal surveillance on him during

the eighteen days until Plaintiff returned it to the Agency.  While the CIA purported to be assisting

him by providing the laptop, Plaintiff claims it was outfitted with electronic surveillance devices.

      Defendants offer several arguments against these claims.  First, according to Defendants the

proper venue for these claims is the Eastern District of Virginia.  Second, Defendants argue that the

Court does not have personal jurisdiction over these eight defendants.  Third, Defendants contend

that under the proper jurisdiction's statute of limitations these claims are untimely.  Finally,

Defendants state that *Bivens* and §§ 1985-1986 do not allow Plaintiff to challenge the appellate

phase of administrative review of his security clearance.


    A.    <u>Is Venue Improper?</u>

      When federal jurisdiction in a civil action is premised on a federal question and no special

statutory venue provision exists – as with Plaintiff's *Bivens*, §§ 1985-1986, and FISA claims – 28

U.S.C. § 1391(b) governs venue.  See *Davis v. Am. Soc'y of Civil Eng'rs*, 290 F. Supp. 2d 116, 120

(D.D.C. 2003).  For such an action, venue is proper in

> (1) a judicial district where any defendant resides, if all defendants reside in the same
> State, (2) a judicial district in which a substantial part of the events or omissions
> giving rise to the claim occurred, or a substantial part of property that is the subject
> of the action is situated, or (3) a judicial district in which any defendant may be found,
> if there is no district in which the action may otherwise be brought.  28 U.S.C. §
> 1391(b).

In this case, individual Defendants reside in different states, so § 1391(b)(1) is inapplicable.[13]

Arguing that § 1391(b)(2) is the applicable venue provision for this action, Defendants contend that by its terms the appropriate venue for Plaintiff's claims under *Bivens*, §§ 1985-1986, and FISA is the Eastern District of Virginia, where the CIA is headquartered and the relevant proceedings occurred.  Plaintiff maintains that the District of Columbia is an appropriate venue for this action under § 1391(b)(2) because CIA and FBI officials conducted certain activities and meetings there related to investigating Plaintiff and because the National Security Council position that Plaintiff lost would have been in the District of Columbia.  In the alternative, Plaintiff argues that the District of Columbia is appropriate as a fallback venue under § 1391(b)(3) because his action cannot be brought in any district.

The Court finds that appropriate venue for this action under § 1391(b)(2) is the Eastern District of Virginia.  The overwhelming bulk of events and omissions giving rise to Plaintiff's claims occurred at CIA Headquarters in Langley, Virginia.  It was the workplace for Plaintiff and seven of the eight defendants implicated in the *Bivens*, §§ 1985-1986, and FISA claims.  It was there that the reinvestigation of Plaintiff's security clearance, alleged scrutiny of his Jewish background, receipt of the laptop by Plaintiff, deliberations on his employment status, review of his administrative appeals, revocation of his security clearance, and decision to terminate him occurred.

By comparison, the events and omissions Plaintiff alleges in the District of Columbia are more tangentially than substantially, related to the claims in this case.  According to Plaintiff, CIA

---

[13] The Court notes that even if these claims were severed into separate actions against individual Defendants, venue in the District of Columbia would still be improper under § 1391(b)(1) because none of the Defendants reside in the District of Columbia.

officials met with White House officials, National Security Council officials, and congressmen in the District of Columbia specifically to discuss Plaintiff's situation.  Plaintiff also claims that his allegedly lost position with the National Security Council would have been in the District of Columbia.[14]  Finally, Plaintiff asserts that a CIA official briefed individual members of the *Jacobs* Panel in the District of Columbia.

The Court concludes that these events and omissions represent only peripheral meetings and consequences, and are not the gravamen of Plaintiff's *Bivens*, §§ 1985-1986, and FISA claims. Even assuming their factual accuracy, they are a dubiously tenuous reed upon which to rest venue.

It is instructive to compare the facts of this case with a similar case from this jurisdiction. In *Davis*, 290 F. Supp. 2d at 119, the plaintiff claimed racial discrimination under 42 U.S.C. § 1981 and § 1985(3) pursuant to being terminated from his job at his employer's headquarters in Virginia.  The sole consequence that he was thereby denied severance benefits in the District of Columbia was inadequate to establish venue there.  The court noted that "the record shows that most if not all of the significant events relating to the action occurred . . . outside this district" and that "only one of the many potential events giving rise to this action . . . occurred in the District of Columbia."  *Davis*, 290 F. Supp. 2d at 123.  The court concluded that venue in the District of Columbia was improper because "the specter of the plaintiff's federal claims" haunted the defendant's headquarters in the Eastern District of Virginia "more than any other locale."  *Id.*

Our instant case parallels *Davis*.  Similarly, like *Davis*, Plaintiff brings claims relating to

---

[14]Were this a Title VII claim, this allegation would create venue by statutory provision.  A plaintiff may bring a Title VII action "in the judicial district in which the aggrieved person would have worked but for the alleged unlawful employment practice . . . ."  42 U.S.C. § 2000e-5(f)(3). *See also James*, 227 F. Supp. 2d at 23-24.  However, Plaintiff's *Bivens*, §§ 1985-1986, and FISA causes of action contain no such provisions enabling venue on this basis.

violations of his constitutional and civil rights by his employer headquartered in Virginia.  He posits a nexus for venue in the District of Columbia based on the consequent loss of economic benefits there in the form of his anticipated position with the National Security Council, as well as other peripheral activities.  Yet undeniably, the weight of Plaintiff's claims hangs most heavily in the Eastern District of Virginia at CIA headquarters where he was employed.  That is where most of the individual Defendants worked, most of the events occurred, and most of the impact of a judgment in this case would be felt.  Thus, as in *Davis*, venue for Plaintiff's *Bivens*, §§ 1985-1986, and FISA claims is likewise improper in the District of Columbia.

Further, the Court concludes that Plaintiff cannot, in the alternative, fall back on § 1391(b)(3) to establish venue in the District of Columbia.  "[S]ection 1391(b)(3) is only applicable if there is no district in which venue is proper under one of the venue statute's first two provisions." *Smith v. US Investigations Servs.*, No. 04-0711, 2004 U.S. Dist. LEXIS 23504, at *12 (D.D.C. Nov. 18, 2004).  As discussed, this action can be brought in the Eastern District of Virginia under § 1391(b)(2).  Therefore, § 1391(b)(3) is inapplicable.  The District of Columbia is not a proper venue.

Given that the District of Columbia is not the proper venue, the Court elects to sever Plaintiff's claims under *Bivens*, §§ 1985-1986 and FISA (Claims I-VI and XX) from the rest of the action and transfer them to the Eastern District of Virginia

CONCLUSION

Plaintiff's Title VII claims (Claims VII and VIII) are not justiciable, and are therefore **DISMISSED** for lack of subject matter jurisdiction.  This Court also lacks subject matter

jurisdiction under the CSRA to review Plaintiff's claim for breach of contract (Claim XIX), and therefore shall **DISMISS** Claim XIX.  Regarding the three improper disclosures Plaintiff alleges in Claim IX, the Court shall **GRANT** summary judgment in favor of Defendant CIA on claims for disclosure to the Jacobs Panel and the Washington Post, which fail to state a claim upon which relief can be granted.  The Court shall **DENY** Defendant CIA's motion for summary judgment as to Plaintiff's claim for disclosure to other government officials and **GRANT** Plaintiff's motion for discovery as to that claim.  On Plaintiff's other Privacy Act claims, the Court holds that Claim XII is time-barred and thus **GRANTS** Defendant CIA's motion for summary judgment.  With respect to Plaintiff's remaining Privacy Act claims (Claims X – XI and XIII – XVI), the Court shall **DENY** Defendant CIA's motion for summary judgment and **GRANTS** Plaintiff's motion for discovery. Finally, on Claims I – VI and XX under Bivens, §§ 1985-1986, and FISA, the Court finds venue to be improper in the District and therefore severs these claims and transfers them to the Eastern District of Virginia.

For the foregoing reasons, IT IS HEREBY ORDERED that,

1. Defendant's Motion to Dismiss or for Summary Judgment is GRANTED IN PART and DENIED IN PART;

2. Plaintiff's Motion for Discovery is GRANTED IN PART and DENIED IN PART;

3. Claims I – VI and XX under Bivens, §§ 1985-1986, and FISA, shall be severed from the present action and transferred to the Eastern District of Virginia.

The Clerk of Court shall notify the Parties of the making of this Order.

DATED this 26th day of February, 2010.


_____/s/_____
JACK D. SHANSTROM
SENIOR U.S. DISTRICT JUDGE